A. P. HAGAR, Appellant,

v.

Hazel I. MARTIN et al., Appellees.

No. 14963.

Court of Civil Appeals of Texas.

Dallas.

March 18, 1955.

Rehearing Denied April 15, 1955.

McKool & Bader, Dallas, for appellant.

Bowyer, Gray, Thomas, Crozier & Harris and Virgil R. Sanders, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from an order granting a temporary injunction restraining appellant A. P. Hagar from interfering with appellees Mrs. Hazel I. Martin and David T. Haines in the latter's sand and gravel mining operations.

On August 1, 1946, Mrs. Hazel I. Martin, a widow, owner of a tract of land of about 640 acres in Dallas County, Texas, as lessor executed a mining lease for a five-year term to Vinson & Hodkin for the purpose of mining and removing sand and gravel from the property. The lease provided for royalty payments to Mrs. Martin for sand and gravel removed.

On August 16, 1946, Mrs. Martin as lessor executed a lease covering 610 acres of the property for a five-year period to appellant A. P. Hagar, "to be used for dairy farming," at a rental of $1,800 per year, payable $900 on September 15 and $900 on March 15 of each year during the term of the lease. This lease was renewable for another five-year term "at the same rental, and upon the same conditions and covenants by giving the lessor notice in writing sixty ·days prior to the expiration of the lease."

Paragraph 2 of the above lease to Hagar ·is as follows: "It is expressly agreed and understood that Vinson & Hodkin Gravel Company have the right and authority to excavate for and remove gravel from any portion of said 610 acres at any time, the said lessor having conveyed and assigned her interest in and to the sand and gravel on said tract by an instrument dated August 1, 1946; and in the event that the said Gravel Company should move its operations from its present location onto any portion of the said 610-acre tract, then and in that event the lessor agrees to refund to lessee at the rate of $3.00 per acre for that portion of the property so taken over; and lessor further agrees to pay for the expense of erecting a fence around any new developed area taken over for gravel excavation; and lessor further agrees that should any damage result to any crops of said lessee, by reason of such gravel ex-

cavation that she, the lessor, shall compensate the lessee for such damage by paying him a fair market value for any crops so damaged, lost or destroyed."

Prior to the expiration of his lease in 1951 appellant Hagar gave the required sixty days notice of his desire to renew, and is now lessee of the 610 acres under said renewal contract and at the time of the trial was grazing about 125 cattle on the property. It will be noted that at the time he gave the sixty-day notice the five-year lease of Vinson & Hodkin had not yet expired. Shortly thereafter it did expire and was not renewed by Vinson & Hodkin.

On May 17, 1952, Mrs. Martin as lessor executed a sand and gravel lease to appellee David T. Haines covering approximately 637 acres including the 610 acres on which Hagar was grazing cattle under his dairy lease. This lease also provided for royalty payments to Mrs. Martin on sand and gravel removed.

Haines immediately moved onto the property, and conducted mining operations on about 30 acres previously fenced and mined for a short time by Vinson & Hodkin under their mining lease, which 30 acres had not been included in Hagar's 610-acre lease. However Haines did conduct testing and exploration operations over the 610 acres. These testing operations consisted of bringing heavy machinery onto the premises and drilling for gravel, then, having located the gravel, of bringing in and using coring machines to estimate the depth and quality of the gravel. Haines testified that without meeting any objection from Hagar he cored about 80 holes over a period of six or seven months at an expense of about $4,000. By means of these tests he located a 10-acre tract on which he decided to undertake mining operations. However he did not immediately move on his dragline, a heavy piece of equipment to be used in excavating for sand and gravel, because at a nearby place on Log Cabin Road there was not a bridge sufficiently strong to allow the heavy dragline to be moved to the site of his planned mining operations. After an

adequate bridge was built, Haines in 1954 moved lumber onto the premises to build a fence around the 10-acre tract as previously staked out. He also tried to move his dragline in, but was prevented from doing so by Hagar. Haines and Mrs. Martin then filed suit against Hagar, asking for and obtaining the temporary injunction which is the subject of this appeal.

Meantime appellee Haines had obtained from Vinson & Hodkin an assignment dated September 27, 1954 of all their right, title and interest under their sand and gravel lease of August 1, 1946.

■ Appellant's first three points on appeal assert in effect that appellee Haines obtained no mining rights under the assignment from Vinson & Hodkin for the reason that the five-year mining lease of Vinson & Hodkin, executed August 1, 1946, had expired July 31, 1951. We agree with appellant that the assignment conveyed no mining rights for the reason stated, and sustain these three points to the extent of so holding.

Appellant's fourth and fifth points allege that the court erred in overruling appellant's motion for judgment and in granting appellees the temporary injunction because appellees acquired no mining rights from any source on the 610-acre tract leased by appellant.

■ We are unable to agree with appellant on these two points. The lease to appellant Hagar on August 16, 1946, operated as a severance of the mineral estate, owned by Mrs. Martin and already leased on August 1, 1946 to Vinson & Hodkin, from the leasehold surface estate leased to appellant "for dairy farming." Appellant himself testified that he did not claim any mineral rights under his lease. Therefore when the Vinson & Hodkin lease expired in 1951 all rights thereunder reverted to the lessor, Mrs. Hazel I. Martin. Stanolind Oil & Gas Co. v. Wimberly, Tex.Civ.App., 181 S.W.2d 942. Consequently she had a right to convey to appellee Haines the mineral lease she executed in his favor on May

17, 1952, including rights of ingress and egress. Appellant's points four and five are overruled.

Appellant in his sixth point asserts that the temporary injunction overturned the status quo. We see no merit in this contention. Appellee had conducted his testing operations over a period of months at a cost of about $4,000; had staked out a 10-acre tract for his mining operations; had moved in lumber to build a fence around the 10-acre tract; had tendered appellant $30 —$3 per acre for the 10-acres taken over— and was delayed in starting his actual mining operations only by his inability for a time to move his dragline over the Log Cabin Road bridge. Haines testified that appellant did not object to any of these activities until appellee was in the act of moving the dragline onto the property. Then appellant resisted further operations by appellee. The status quo was that appellee Haines was engaged in the performance of his lease contract when he was interrupted by appellant. We overrule appellant's sixth point.

Appellant's seventh point says that appellees were estopped and were guilty of laches, so have waived their rights to injunctive relief. In our opinion there is no basis for such claim. Appellee Haines acted with reasonable promptness under the circumstances. Moreover he was operating under a five-year lease. The seventh point on appeal is overruled.

The eighth point on appeal challenges the sufficiency of the pleadings and the evidence to warrant a temporary injunction. Appellees pled the facts rather fully and alleged their damages were difficult of ascertainment because they did not as yet know and could not know with reasonable accuracy the quantity and quality of gravel available. The evidence shows an expenditure already made of about $4,000 by appellee Haines, not including expense in connection with the presence of, and his inability to use his dragline, a heavy piece of machinery which he says was worth $50,000 when new. On the other hand appellant's lease expressly provided that he should be paid $3 per acre for land taken over by the mining lessee. The balancing of the equities under such circumstances favors appellee Haines. 24 Tex.Jur. 136. Remedy by way of trespass to try title was not available to appellee. We think the situation presented by the pleadings and evidence in this case fully warrants injunctive relief. Stanolind Oil & Gas Co. v. Wimberly, supra. Appellant's eighth point is overruled.

The ninth of appellant's points is that the injunction order is too vague, general, and indefinite. We quote a portion of the order: "It Is Accordingly Ordered, Adjudged And Decreed That the Clerk of this Court issue a writ of injunction * * * restraining and enjoining A. P. Hagar, defendant, his agents, servants and employees and attorneys from resisting or interfering in any manner with the use by plaintiff Haines, his servants and employees, of so much of the surface of said 610 acre tract which the defendant Hagar holds under dairy farming lease from plaintiff Hazel I. Martin as is reasonably necessary to the full enjoyment of the plaintiff Haines' sand and gravel lease on said land and with the right of plaintiff Haines and his authority to excavate for and remove gravel from any portion of said 610 acres at any time and especially the ten-acre tract described in plaintiffs' petition and being the ten acres staked on the ground by plaintiff Haines, and from doing any act to interfere with plaintiff Haines' mining operations, threatening plaintiff Haines, his servants, agents and employees and from interfering with or injuring any of plaintiff Haines' property or equipment used in his said mining operations for sand or gravel and from denying or interfering in any way with plaintiff Haines' ingress and egress in, on and over said 610 acres in the conduct of his mining operations for sand and gravel; * * *." The order in our opinion is sufficiently definite. The ninth point on appeal is overruled.

The tenth point on appeal complains of the court's ruling in admitting in evi-

dence the assignment from Vinson & Hodkin to appellee Haines over appellant's objection that the assignment had not been properly authenticated. Appellee counters by pointing out that, though he did not set out the assignment in full, he pled the existence of the instrument, which was not denied by appellant. Whatever error, if it was error, there may have been in admitting the assignment, was harmless. We have already held, in sustaining appellant's first three points, that in our opinion appellee Haines obtained no mining rights by reason of the assignment. The instrument is therefore immaterial to the issues in this case, and is to be regarded as mere harmless surplusage in the record. The tenth point is overruled.

 The testimony of appellant and appellees is in conflict in some respects. Appellant Hagar testified over objections by appellees that he at first refused to sign the lease of August 16, 1946 because of paragraph 2 referring to the Vinson & Hodkin mining lease; and he signed the lease only when told by Mrs. Martin that said paragraph was null and void. However appellant does not seek to repudiate or cancel his lease. On the contrary, with knowledge that paragraph 2 remained in his lease contract, he renewed it in 1951 without objection so far as the record shows, and should not now be heard to try to vary the terms of his written contract by parol testimony. Moreover Mrs. Martin's testimony positively contradicts appellant's testimony. It was of course for the trial court to make findings in the face of conflicting testimony, and if we were to say (which we do not) that appellant's testimony raised a material issue of fact, we would nevertheless be bound by the trial court's presumed finding against appellant.

Appellant also says that he was offered one year's rent—$1,800—by appellee Haines for permission to pursue his mining operations. Appellee Haines denied making any such offer. We do not see the materiality of the testimony, but again we point out that in any event we are bound by the trial court's presumed finding against appellant.

The judgment of the trial court is affirmed.